**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 32818**

CAMILLA CAFFERTY, individually and as
natural parent and guardian of ALLAN
CAFFERTY, a minor,

    Plaintiff-Appellant,

v.

STATE OF IDAHO, DEPARTMENT OF
TRANSPORTATION, DIVISION OF
MOTOR VEHICLE SERVICES,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2007 Term

2007 Opinion No. 88

Filed: May 31, 2007

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Honorable Kathryn A. Sticklen, District Judge.

District court dismissal of negligence and wrongful death claim, <u>affirmed</u> in part, <u>reversed</u> in part and <u>remanded.</u>

Hepworth, Lezamiz & Janis, Chtd., Twin Falls, for appellant.  Robyn Maddox Brody argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.  Barbara Ann Beehner-Kane, Deputy Attorney General, argued.

_____

BURDICK, Justice

    Appellant Camilla Cafferty appeals the district court's dismissal of her claims for negligence and wrongful death against Respondent State of Idaho, Department of Transportation, Division of Motor Vehicle Services (DMV) based on immunity under the Idaho Torts Claims Act (ITCA).  We affirm in part, reverse in part and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    The facts of this case are undisputed.  On April 14, 2004, Timothy Hedges was released from prison after serving his entire five-year sentence for felony DUI, his eighth DUI.  Only four

1

months later, on August 18, 2004, Hedges, driving drunk, crossed the centerline of Highway 21 in Ada County and collided head-on with a vehicle driven by Patrick Cafferty. Patrick Cafferty was killed in the accident, and his wife, Camilla, and son, Allan, were injured. Hedges had a long history of DUI convictions; the accident resulted in Hedges's tenth DUI conviction.[1] Although Hedges's driver's license had been suspended as part of his latest felony DUI conviction, prior to the collision he had applied to have it reinstated, and his license had been reinstated by DMV.

In addition to the aggregate five-year sentence on Hedges's eighth felony DUI in 1999, the sentencing judge, The Honorable James C. Morfitt, suspended Hedges's license for five years. The judgment, however, did not indicate when the suspension started, stating: "IT IS FURTHER ORDERED that the defendants driving privileges are suspended for a period of five (5) years." After initially receiving the judgment suspending Hedges's license, DMV inputted a suspension start date of July 25, 2001 (five years from Hedges's earliest possible release date). The DMV notified Hedges that his suspension would last through April 26, 2005.[2] Subsequently, however, Danny E. Reed, a records specialist of the DMV, reviewed the file and changed the start date of the suspension to July 20, 1999, the date the order was signed; this change was based upon the silence in the district court order as to the start date and the DMV's policy regarding such silence.

On May 12, 2004, the district judge issued Hedges a temporary restricted license. The temporary restricted driver's license stated that Hedges's five-year suspension began on July 9, 1999. DMV received a copy of the temporary restricted license on July 9, 2004. Once again, DMV records were changed, this time to reflect that the suspension began on July 9, 1999, and expired on July 9, 2004. Less than three months after his release from prison, on July 13, 2004, after Hedges applied for a license and passed the relevant tests, DMV issued him an unrestricted license.

---

[1] Hedges was charged with his ninth DUI on August 2, 2004, in Meridian. He pled guilty to these charges.

[2] In her brief, Cafferty claims this letter contains a typographical error, and was meant to inform Hedges that his license was suspended until April 26, 2006. She does not provide any authority indicating that the letter does contain a typographical error as to the date. However, the record does show that DMV's records initially indicated a reinstatement date of April 26, 2006. Regardless of which date is correct, the analysis remains the same.

After the accident, Camilla Cafferty filed a complaint alleging gross negligence against DMV. Prior to trial, the parties made cross-motions for summary judgment. The district court then orally granted DMV's motion for summary judgment, and Cafferty appeals this decision.

## II. STANDARD OF REVIEW

When reviewing a motion for summary judgment, this Court uses the same standard employed by the trial court when deciding such a motion. *Kolln v. Saint Luke's Regl. Med. Ctr*., 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997). "[I]f the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" summary judgment is proper. I.R.C.P. 56(c). The burden is on the moving party to prove an absence of genuine issues of material fact. *Evans v. Griswold*, 129 Idaho 902, 905, 935 P.2d 165, 168 (1997). In addition, this Court views the facts and inferences in the record in favor of the non-moving party. *Id.*

The interpretation of a statute is a question of law over which this Court exercises free review. *See, e.g., Martin v. State Farm Mut. Auto. Ins. Co*., 138 Idaho 244, 246, 61 P.3d 601, 603 (2002).

## III. ANALYSIS

In addition to the "strong line" of authority setting out the standards under which this Court reviews a motion for summary judgment, *Harris v. State Dept. of Health & Welfare*, 123 Idaho 295, 298, 847 P.2d 1156, 1159 (1992), when reviewing a motion for summary judgment against a governmental entity and its employees under ITCA, this Court must engage in a three step analysis. *Coonse ex rel. Coonse v. Boise Sch. Dist*., 132 Idaho 803, 805, 979 P.2d 1161, 1163 (1999); *Harris*, 123 Idaho at 298 n.1, 847 P.2d at 1159 n.1; *Olguin v. City of Burley*, 119 Idaho 721, 723, 810 P.2d 255, 257 (1991); *Czaplicki v. Gooding Joint Sch. Dist. #231*, 116 Idaho 326, 330, 775 P.2d 640, 644 (1989). First, we must determine whether "tort recovery is allowed under the laws of Idaho." *Harris*, 123 Idaho at 298 n.1, 847 P.2d at 1159 n.1. Second, this Court determines if "an exception to liability under the ITCA shields the alleged misconduct from liability." *Coonse*, 132 Idaho at 805, 972 P.2d at 1163. Finally, "if no exception applies, [we examine] whether the merits of the claim as presented for consideration on the motion for summary judgment entitle the moving party to dismissal." *Id.*

3

Here, the parties concede that a cause of action for negligence exists under the laws of Idaho. They disagree, however, on whether an exception to the liability of ITCA provides DMV with immunity from Cafferty's suit. Cafferty recognizes that DMV is only liable for issuing Hedges a license if its actions were grossly negligent or reckless, willful and wanton. *See* I.C. § 6-904B(3).[3] Importantly, the parties do not argue that there is a question of fact; instead they argue as to whether the facts show that DMV's actions rose to a level of gross negligence so as to open DMV to liability. Cafferty maintains that because DMV failed to follow its statutory obligations when it issued the license it cannot claim immunity under ITCA.

First, Cafferty asserts that I.C. § 18-8005(5)(d) governs this situation, and DMV's failure to follow its mandates amounts to gross negligence or reckless, willful or wanton conduct. Moreover, Cafferty asserts that DMV's failure to use the procedures set out in I.C. § 49-326A also amount to gross negligence or reckless, willful and wanton conduct. Finally, Cafferty argues that DMV's failure to refuse Hedges a license under I.C. § 49-303(6) or (10) amounts to gross negligence or reckless, willful and wanton conduct, and that the district court incorrectly concluded that she did not adequately plead a cause of action based on these statutes. We will turn first, then, to the issue of whether the district court correctly determined that Cafferty had not pleaded a cause of action based on I.C. § 49-303(6) or (10) since resolution of this issue affects the immunity analysis. We will then address the question of whether DMV is entitled to immunity.

**A. Did Cafferty adequately plead a cause of action based on I.C. § 49-303(6) and (10)?**

Cafferty argues that because her complaint alleges that DMV improperly issued a license to Hedges, that the issuance of that license proximately caused the death of Patrick Cafferty and the injuries to Camilla and Allan Cafferty, and that DMV's conduct was grossly negligent or reckless, she has met the requirements of I.R.C.P. 8(a)(1). In its briefing, DMV argued that it

---

[3] Idaho Code § 6-904B provides, in pertinent part:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent and without gross negligence or reckless, willful and wanton conduct as defined in section 6-904C, Idaho Code, shall not be liable for any claim which:
>
> . . .
>
> 3. Arises out of the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend, or revoke a permit, license, certificate, approval, order or similar authorization.

was entitled to rely on Cafferty's pleadings, which did not put it on notice that she was claiming a cause of action based on I.C. § 49-303(6) or (10), and since she failed to timely amend her pleadings, the district court correctly held that Cafferty had not raised the issue and granted DMV summary judgment. However, at oral argument DMV conceded that broadly read, Cafferty's pleadings raised the issue of negligence under I.C. § 49-303(6) or (10).

Our Rules of Civil Procedure establish a system of notice pleading. *Cook v. Skyline Corp.*, 135 Idaho 26, 33, 13 P.3d 857, 864 (2000). A complaint need only contain a concise statement of the facts constituting the cause of action and a demand for relief. I.R.C.P. 8(a)(1); *Clark v. Olsen*, 110 Idaho 323, 325, 715 P.2d 993, 995 (1986). "A party's pleadings should be liberally construed to secure a 'just, speedy and inexpensive' resolution of the case." *Gillespie v. Mountain Park Estates, LLC*, 138 Idaho 27, 30, 56 P.3d 1277, 1280 (2002) (citing *Christensen v. Rice*, 114 Idaho 929, 931, 763 P.2d 302, 304 (Ct. App. 1988) (citing I.R.C.P. 1(a)); *Deaton v. Leibrock*, 114 Idaho 614, 759 P.2d 905 (Ct. App. 1988)). "[I]ssues considered on summary judgment are those raised by the pleadings." *Gardner v. Evans*, 110 Idaho 925, 939, 719 P.2d 1185, 1199 (1986) (quoting *Argyle v. Slemaker*, 107 Idaho 668, 669, 691 P.2d 1283, 1284 (Ct. App. 1984)). While courts may allow parties to amend their pleadings to conform to proof offered at trial, I.R.C.P. 15(b), "[a] cause of action not raised in a party's pleadings may not be considered on summary judgment. . . ." *O'Guin v. Bingham County*, 139 Idaho 9, 15, 72 P.3d 849, 855 (2003) (citing *Beco Const. Co. v. City of Idaho Falls*, 124 Idaho 859, 865, 865 P.2d 950, 956 (1993)).

Cafferty's amended complaint alleges that Hedges's license should have been suspended until at least April 14, 2005, pursuant to I.C. § 18-8005(5)(d), and that by issuing Hedges a license "during a period of time when his driving privileges should have remained suspended" DMV acted with gross negligence or recklessly, willfully and wantonly. Additionally, it also alleges:

> The conduct of [DMV] involved doing acts or failing to perform acts, which a reasonable person in a similar situation and of similar responsibility would, with a minimum of contemplation, be inescapably drawn to recognize their duty to act or their duty not to act, and failing that duty shows a deliberate indifference to the harmful consequences to others, including the consequence to [Camilla and Allan Cafferty].

. . .

5

> Defendant Hedges was allowed to operate a motor vehicle on the highways of the State of Idaho, under circumstances where it was foreseeable that he would again operate a motor vehicle while under the influence of intoxicants, and as a proximate result of said improper conduct by Defendant Idaho DMV, Plaintiff's decedent was killed and Plaintiffs were also injured . . .

Therefore, Cafferty's amended complaint speaks generally to duty, a failure to recognize such a duty by DMV, and improper actions by DMV. It also speaks to the foreseeable harm of allowing a person with Hedges's history to operate a vehicle on the highways of this state.

Idaho Code § 49-303 provides DMV with duties. It mandates that DMV shall not issue a driver's license to any person who is a habitual drunkard, I.C. § 49-303(6), or when the DMV "has good cause to believe that the operation of a motor vehicle on the highways by that person would be harmful to public safety or welfare." I.C. § 49-303(10). Such a statute gives DMV a mandatory duty to refuse to issue a license in certain situations. Since Cafferty's amended complaint speaks to duty and negligence, and the harm which might result if such a duty is disregarded, we hold that Cafferty raised the issue of negligence under I.C. § 49-303(6) and (10) and reverse the district court.

## B. Did the district court err when it granted DMV's motion on the basis of immunity?

Cafferty argues that the district court erred when it granted summary judgment to DMV on the basis of immunity because DMV was grossly negligent by reinstating Hedges's license or by not refusing to issue him a license. First, Cafferty asserts that DMV's failure to reinstate Hedges's license using the procedures set out in I.C. § 49-326A amounts to gross negligence or reckless, willful or wanton conduct. Second, Cafferty asserts that DMV's issuing Hedges violated I.C. § 49-303(6) or (10) and was therefore grossly negligent or reckless, willful and wanton conduct.

Under ITCA, gross negligence is "the doing or failing to do an act which a reasonable person in a similar situation and of similar responsibility would, with a minimum of contemplation, be inescapably drawn to recognize his or her duty to do or not do such act and that failing that duty shows deliberate indifference to the harmful consequences to others." I.C. § 6-904C(1). Reckless, willful and wanton conduct is "present only when a person intentionally and knowingly does or fails to do an act creating unreasonable risk of harm to another, and which involves a high degree of probability that such harm will result." I.C. § 6-904C(2).

We begin with Cafferty's arguments regarding the reinstatement of Hedges's license without using the procedures set out in I.C. § 49-326A. Cafferty asserts that because Judge

6

Morfitt's order suspending Hedges's license was silent as to the start date of the suspension, I.C. § 18-8005(5)(d) "fills the gap" left by the silence. Idaho Code § 18-8005(5) provides the penalties for a person who has two or more DUI convictions. It requires, among other penalties, that the driver shall have his license suspended beginning after release from imprisonment. I.C. § 18-8005(5)(d). Cafferty asserts DMV should have continued to treat the five-year suspension as if it became effective upon Hedges's release from prison and used the procedures for reinstatement set out in I.C. § 49-326A. Therefore, she concludes, the changes to the start date of Hedges's suspension amount to gross negligence or reckless, willful and wanton conduct.

DMV argues that I.C. § 49-326A governs the administration of court ordered suspensions only when the judge has specifically ordered the suspension to begin after the release from prison, and that it was entitled to rely on both the 1999 order and the 2004 issuance of a temporary license when determining the start date of the suspension rather than assuming it commenced upon Hedges's release. Therefore, DMV concludes, it did not act with gross negligence or recklessly, willfully and wantonly when it issued Hedges a license.

Here, the reinstatement of Hedges's license was possibly governed by two separate statutes: I.C. § 49-326A,[4] governing the administration of judicially suspended licenses that become effective after release from imprisonment, and I.C. § 49-328,[5] governing the

---

[4] Idaho Code § 49-326A provides:

(1) When a court's judgment or order provides that the suspension of an individual's driver's license or driving privileges shall begin after the individual is released from confinement or imprisonment, the department, for purposes of administering the ordered suspension, shall consider the driver's license or driving privileges as suspended effective as of the end of the last day of the fixed portion of the ordered sentence, as shown by the judgment or sentencing order of the court.

(2) Unless otherwise ordered by the court, the suspension shall remain in effect until the individual applies for reinstatement of his or her driver's license or driving privileges and can provide verifiable documentation to establish the date of release from confinement or imprisonment and show that the court-ordered suspension period has expired since the individual's release. Upon such a showing, the department will reinstate the individual's driver's license or driving privileges as provided by law.

(3) Where the department is notified of the release of the individual, either by the court or the agency having custody over the individual during the period of confinement or imprisonment, the department shall amend its records to reflect the actual court-ordered period of suspension.

(4) No time credit against the court-ordered period of suspension will be given while the individual is incarcerated or if the individual is reincarcerated. The entire period of the court-ordered suspension must run after the individual is released from confinement or imprisonment.

[5] I.C. § 49-328 provides:

reinstatement of suspended licenses when the period for suspension has expired. These statutes work together. For I.C. § 49-326A to apply to a reinstatement, the judge must order the suspension to begin upon release from imprisonment; if so, then the DMV must follow certain procedures, such as requiring documentation from the driver seeking reinstatement regarding his release date, before it can reinstate the license. Idaho Code § 49-328 applies to all situations once the period of suspension has expired. Therefore, if a driver seeks a reinstatement, and that driver's suspension was ordered to begin after the period of his imprisonment, he must meet both the requirements of I.C. §§ 49-326A and 49-328. If, however, the driver's suspension does not begin after the period of his imprisonment, then he must meet only the requirements of I.C. § 49-328 before DMV shall reinstate his license.

There is no question that DMV followed the procedures set out in I.C. § 49-328. Therefore, it can only have acted negligently if the reinstatement of Hedges's license should

---

(1) When the period of revocation, disqualification or suspension of a driver's license has expired, or the reason for the revocation, disqualification or suspension no longer exists, the department shall reinstate the driver's license or driving privileges on application of the driver.

(2) The application shall be in the form prescribed by the department and accompanied by a reinstatement fee of fifteen dollars ($15.00) which shall be deposited in the state highway account.

(3) A driver's license which has been suspended under section 49-1505, Idaho Code, for failure to pay an infraction penalty shall not be reinstated until the licensee provides proof that the infraction penalty has been paid to the court.

(4) In addition to any other fees required in this section to be collected, the department shall collect fifty dollars ($50.00) for reinstating a driver's license after conviction for driving under the influence, without privileges, and after conviction or other violation of any other traffic related misdemeanor or infraction, of which fees forty dollars ($40.00) shall be paid over to the county treasurer of the county in which the conviction occurred for support of that county's justice fund, or the current expense fund if no county justice fund has been established and the ten dollars ($10.00) shall be deposited in the state highway account.

(5) In addition to any other fees required in this section to be collected, the department shall collect one hundred fifteen dollars ($115) for reinstating a driver's license after a suspension imposed under the provisions of section 18-8002 or section 18-8002A, Idaho Code, or after a suspension arising out of any alcohol or drug related offense, other than a suspension imposed upon a person under eighteen (18) years of age pursuant to section 18-1502(d), Idaho Code. Funds collected pursuant to this subsection shall be deposited in the state highway account. The department shall reevaluate the amount of the reinstatement fee herein imposed not later than February, 2000, to determine the sufficiency of the fee to meet the costs associated with the implementation of section 18-8002A, Idaho Code.

(6) When there is more than one (1) reason why a driver's license was revoked or suspended or why a driver was disqualified, the department shall not collect multiple fees for reinstatement, but shall only collect one (1) reinstatement fee, which shall be the greater reinstatement fee, provided however, the department shall collect a reinstatement fee for each suspension under chapter 80, title 18, Idaho Code.

have also been governed by I.C. § 49-326A. In order to determine if I.C. § 49-326A applied to the reinstatement, it is necessary to determine whether Hedges's suspension was ordered to begin after his release.

Judge Morfitt's original order provided for a five-year suspension, but was silent as to the start date. However, his subsequent issuance of a temporary license to Hedges indicated that the suspension did not commence after the date Hedges was released from prison. Instead, it specifically states that the suspension began on July 9, 1999. Cafferty insists that this does not matter for two reasons: (1) Reed had already changed the suspension start date prior to receiving the temporary license; and (2) DMV should have ignored the district court's statement and instead applied I.C. § 18-8005(5)(d) to figure the start date of the suspension. Both of these arguments fail.

To begin, Cafferty's first argument fails under the facts of the case. Although Reed first changed the start date on his own accord to July 20, 1999, he again changed it to reflect the judge's statement that the suspension began on July 9, 1999. Therefore, the fact that Reed had previously changed it is immaterial because the DMV did not rely on this change when reinstating Hedges's license. Since Hedges's license was reinstated on July 13, 2004, it is clear that DMV did not and could not have relied on Reed's original change when it reinstated Hedges's license.

While we have found immunity as to the claim under I.C. § 49-362A, the DMV's actions are not above reproach. The evidence before us indicates that DMV ignored the procedure for reinstating licenses under I.C. § 49-326A. There is no indication that DMV implemented the changes prescribed by the legislature when it adopted this statute, nor even trained their employees so as to make them aware of a secondary procedure they would need to follow in certain instances. The failure to implement training to follow the Legislature's mandates by a shoddy or nonexistent training program is inexcusable.

Next, Cafferty's second argument also fails as only the district court had the authority to suspend Hedges's license as part of his sentence and DMV could not disregard this authority. Hedges's suspension was part of his criminal sentence, and our courts are charged with the authority to pass, determine and impose sentences. I.C. §§ 18-106; 18-107. In addition to the charge, our legislature has given courts the exclusive authority to suspend or revoke licenses upon conviction for DUI. I.C. § 49-325(1)(b). DMV has the authority to suspend licenses when

9

a court fails to order a mandatory suspension. I.C. § 49-326(1)(a).[6] However, such was not the case here, as the district court ordered a mandatory suspension.

Rather than failing to order a mandatory suspension, in this instance the district court incorrectly applied the provisions of I.C. § 18-8005(5)(d) when sentencing Hedges for DUI by failing to begin the mandatory suspension after Hedges's incarceration ended. However, this mistake does not give DMV the authority to apply the provisions of I.C. § 18-8005(5)(d) in derogation of the court's later statement regarding the start date, nor does it give DMV the authority to refuse to apply the start date later indicated by the judge to Hedges's suspension. *See* I.C. § 49-328 (the DMV *shall* reinstate a license when the period of suspension has ended). The DMV could not disregard the judge's clear statement as to the start date. *See Fullmer v. Collard*, 143 Idaho 171, __, 139 P.3d 773, 776 (Ct. App. 2006) (stating that the IDOC is not justified in refusing to apply to a defendant's sentence credits incorrectly calculated by the sentencing judge); *see also In re Weick*, 142 Idaho 275, 279, 127 P.3d 178, 182 (2005) (noting that a party may not knowingly violate a court order he believes to be incorrect or he risks contempt and noting that public policy dictates that parties obey court orders).

Here, DMV relied on the information provided in the district court's order and temporary license. DMV had a copy of the temporary license prior to the date they reinstated Hedges's license, and they used the date on the temporary license to recalculate the end date of Hedges's suspension. The requirements of I.C. § 49-326A, which apply only when a suspension begins after releases from imprisonment, were not applicable here because Hedges's suspension began prior to his imprisonment according to a later, explicit statement by the district court. DMV was entitled, then, to rely only on the provisions of I.C. § 49-328 when reinstating Hedges's license. Therefore, as a matter of law, DMV's reinstatement of Hedges's license using the requirements of I.C. § 49-328 but not those in I.C. § 49-326A was not grossly negligent or reckless, willful and wanton. We affirm the district court's dismissal of the negligence claim based on I.C. § 18-8005(5)(d) and I.C. § 49-326A on summary judgment

We turn now to Cafferty's argument that DMV was grossly negligent in issuing Hedges a license because DMV has a mandatory duty to not issue licenses to either habitual drunkards or to those whom DMV should have known would be harmful to the public's safety if allowed to

---

[6] The obvious corollary to this provision being, if the court has ordered a suspension, the DMV cannot. There is no authority in chapter 3, title 49 of the Idaho Code for the DMV to change or disregard a judge's order.

drive on our highways. *See* I.C. § 49-303(6), (10).[7] Here, there are genuine issues of material fact precluding summary judgment on the issue of DMV's immunity.

At the time DMV reinstated Hedges's license, he had eight previous DUIs, and DMV's records show a total of seven DUIs, three being felony DUIs. While our case law and statutes fail to define habitual drunkard, a reasonable jury could find that a person with seven DUI convictions is a "habitual drunkard," and that DMV acted with gross negligence or recklessly, willfully and wantonly by reinstating the unrestricted license of a person with such a large number of DUIs.[8] Likewise, a jury could also find that DMV should have known that Hedges would be harmful to the public if allowed to drive on the highways of this state. Hedges had a lengthy history of DUI arrests, had served the full aggregate sentence for his last felony DUI and had received the maximum suspension sentence allowed under Idaho law. All of these facts suggest that he would be a danger to the public if allowed to drive. Therefore, because there is a question of fact as to whether DMV acted with gross negligence or recklessly, willfully and wantonly, we remand to the district court.

## IV. CONCLUSION

We reverse the district court's decision that Cafferty had not raised the issue of negligence under I.C. § 49-303 in her complaint and hold that there is a question of fact as to whether DMV's reinstatement of Hedges's license was grossly negligent or reckless, willful and wanton pursuant to the mandatory duties proscribed in I.C. § 49-303 and remand. We affirm the district court's decision granting summary judgment to DMV on Cafferty's negligence claims based on I.C. § 18-8005(5)(d) and I.C. § 49-326A. Neither party requested attorney fees. Costs are awarded to the prevailing party.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES, **CONCUR.**

---

[7] Additionally, although DMV had no authority to refuse to reinstate Hedges's license under I.C. § 49-328, pursuant to I.C. § 49-322, it had a mandatory duty to cancel Hedges's license if it determined he was not entitled to have a license as he met the provision of I.C. § 49-303(6), (10).

[8] Idaho Code § 40-303(6) has recently been amended. House Bill 54 changed the language of I.C. § 49-303(6) from: "Is a habitual drunkard, or is addicted to the use of narcotic drugs" to "Has been adjudged by a court of competent jurisdiction to be an habitual drunkard or addicted to the use of narcotic drugs, and such order has been received by the department." This change will be effective July 1, 2007. Idaho HB 54, 59th Leg., First Reg. Sess. (March 30, 2007).

11